UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM L. JOHNSON AND JULIAN W. MOORE, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>THE METROPOLITAN GOVERNMENT )<br>OF NASHVILLE AND DAVIDSON COUNTY, )<br>TENNESSEE, METROPOLITAN POLICE )<br>DEPARTMENT, CHIEF RONAL W. SERPAS, )<br>individually and in his official capacity as Chief )<br>of Police, DEPUTY CHIEF STEVE )<br>ANDERSON individually and in his official )<br>capacity as Deputy Chief of Police, DEPUTY )<br>CHIEF HONEY PIKE, individually and in her )<br>official capacity as Deputy Chief of Police, AND )<br>DEPUTY CHIEF JOSEPH BISHOP, )<br>individually and in his official capacity as )<br>Deputy Chief of Police )<br>)<br>Defendants. ) | Case No. 3:07-0979<br>Judge Trauger |

**Consolidated with:**

| | |
|---|---|
| KEITH M. HOLLEY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE METROPOLITAN GOVERNMENT )<br>OF NASHVILLE AND DAVIDSON COUNTY, )<br>TENNESSEE, *et al.*, )<br>Defendants. ) | Case No. 3:08-0031<br>Judge Trauger |

1

**MEMORANDUM**

Defendants Deputy Chiefs Steve Anderson, Honey Pike, and Joseph Bishop, have filed a Motion to Dismiss (Docket No. 12)[1] and a Supplemental Motion to Dismiss (Docket No. 18), to which plaintiffs William Johnson and Julian Moore have responded (Docket No. 24), and defendants Anderson, Pike, and Bishop have replied (Docket No. 25). For the reasons discussed herein, the motions will be granted.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs William L. Johnson and Julian W. Moore are employees of the Metropolitan Police Department, having attained the rank of sergeant in 2005 and 2004, respectively.[2] In 2006, the plaintiffs both applied to be promoted to the rank of lieutenant. Neither Mr. Johnson nor Mr. Moore was selected to be promoted.

The selection process for the promotions involved two steps. First, the sergeants who had applied for the positions were given a written test. Those who scored above a certain percentage on this test were then directed to an assessment center, where their skills and leadership abilities in real life situations were assessed. Out of approximately 150 sergeants who took the written test, only approximately 50 or 60 scored high enough to qualify for the second

---

[1] All pending motions at issue in this opinion were filed before this case was consolidated with *Holley v. The Metropolitan Government of Nashville and Davidson County*, Case No. 3:08-0031. Accordingly, all docket numbers refer to *Johnson v. The Metropolitan Government of Nashville and Davidson County*, Case No. 3:07-0979.

[2] Unless otherwise noted, the facts have been drawn from the plaintiffs' Amended Complaint (Docket No. 33), in accordance with the court's task on a motion to dismiss to determine whether "[t]he factual allegations, assumed to be true . . . show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, No. 03-5306, 2007 U.S. App. LEXIS 20556, at *6 (6th Cir. Aug. 28, 2007).

2

step of evaluation at the assessment center.  The plaintiffs allege that, after the completion of this second step, Mr. Moore was ranked five and Mr. Johnson was ranked nine out of the 50 or 60 remaining applicants.

On September 29, 2006, the promotions were announced, and the plaintiffs discovered that they had not been selected for promotion.  The plaintiffs allege that the Metropolitan Police Department used a "slide banding" method to select the sergeants who were promoted and that this method allowed African-American and female employees to be promoted ahead of Caucasian and male employees, regardless of how the applicants had performed on the written test and the assessment.  The plaintiffs allege that Deputy Chiefs Anderson, Pike, and Bishop authorized this "slide banding" method of assessment.

On September 28, 2007, plaintiffs William Johnson and Julian Moore filed this action, alleging: (1) violation of the Equal Protection Clause of the Fourteenth Amendment; (2) violations of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 41-21-401, *et seq*.; and (3) aiding and abetting racial and sexual discrimination.  (Docket No. 1)  On March 17, 2008[3], the plaintiffs filed an Amended Complaint, alleging:  (1) violation of the Equal Protection Clause of the Fourteenth Amendment; (2) violations of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 41-21-401, *et seq*.; (3) aiding and abetting racial and sexual discrimination; and (4) violation of Title VII of the Civil Rights Act of 1964.  (Docket No. 76)

On November 6, 2007, defendants Anderson, Pike, and Bishop moved to dismiss all claims filed against them (Docket No. 12), and on November 30, 2007, defendants Anderson,

---

[3]By Order entered April 2, 2008 (Docket No. 40), the Amended Complaint is to be deemed filed on February 5, 2008.

3

Pike, and Bishop filed a Supplemental Motion to Dismiss, raising the qualified immunity defense (Docket No. 18). On March 18, 2008, defendants Anderson, Pike, and Bishop filed an additional Supplemental Motion to Dismiss the plaintiffs' Title VII claims (Docket No. 36), which the court granted on April 2, 2008 (Docket No. 41).

## ANALYSIS

### I. Motion to Dismiss Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will accept as true the facts as the plaintiff has pleaded them. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002); *Performance Contracting, Inc. v. Seaboard Sur. Co.*, 163 F.3d 366, 369 (6th Cir. 1998). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Indeed it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." *Scheuer*, 416 U.S. at 236. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz*, 534 U.S. at 514.

In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007), the Supreme Court readdressed the pleading requirements under the federal rules. The Court stressed that, although a complaint need not plead "detailed factual allegations," those allegations "must be enough to

4

raise a right to relief above the speculative level." *Id.* at 1964-65. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, No. 03-5306, 2007 U.S. App. LEXIS 20556, at *6 (6th Cir. Aug. 28, 2007) (citing *Twombly*, 127 S.Ct. at 1965). Further, the Court observed that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that this substantive threshold is not achieved by conclusory assertions. *Twombly*, 127 S.Ct. at 1965 n.3.

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965; *see also Swierkiewicz,* 534 U.S. at 508 n.1; *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer,* 416 U.S. at 236 (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote and unlikely"). With this standard in mind, the court turns to an analysis of the plaintiffs' claims against defendants Anderson, Pike, and Bishop.

**II.     The Qualified Immunity Defense**

Defendants Anderson, Pike, and Bishop assert the defense of qualified immunity as to the

5

Case 3:07-cv-00979   Document 57   Filed 05/13/08   Page 5 of 15 PageID #: 250

plaintiffs' claims arising under the Fourteenth Amendment and § 1983. Government officials performing discretionary functions pursuant to their employment "are shielded from liability through 'qualified immunity' if they violate an individual's constitutional rights," but the rights were not "'clearly established' at the time" they were violated. *Marvin v. Taylor*, --- F.3d ----, 2007 WL 4232968 at *7 (6th Cir. Dec. 4, 2007) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The defense "shields government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Harlow*, 457 U.S. at 818); *see also Smoak v. Hall*, 460 U.S. F.3d 768, 777 (6th Cir. 2006).

That is, "'[q]ualified immunity is *an immunity from suit* rather than a mere defense to liability; and like an absolute immunity it is effectively lost if a case is erroneously permitted to go to trial.'" *Marvin*, 2007 WL 4232968 at *7 (emphasis in original) (quoting *Scott v. Harris*, --- U.S. ----, ----, 127 S.Ct. 1769, 1774 n. 2 (2007)); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Therefore, qualified immunity operates to defeat a plaintiff's constitutional claim against a police officer who made "a decision that, even if constitutionally deficient, reasonably misapprehend[ed] the law governing the circumstances." *Id*. (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)); *see also Saucier v. Katz*, 533 U.S. 194, 206 (2001) ("Qualified immunity operates . . . to protect officers from the sometimes 'hazy border between excessive and acceptable force.'")

In order to effectuate qualified immunity as an "immunity from suit," rather than a defense to liability, the Supreme Court has promulgated a two-part inquiry for analyzing this

6

issue: "the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established," the court must address "whether the right was *clearly* established . . . on a . . . specific level." *Saucier*, 533 U.S. 194, 200 (2001) (emphasis added). The Sixth Circuit has recently reiterated that "[t]he issue of qualified immunity may be submitted to a jury only if 'the legal question of immunity is completely dependent upon which view of the [disputed] facts is accepted by the jury.'" *Humphrey*, 482 F.3d at 846 (quoting *Brandenburg v. Cureton*, 882 F.2d 211, 216 (6th Cir. 1989)).

The threshold question requires the court to consider, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*. Of course, if the allegations support "no constitutional violation, then the plaintiff's § 1983 claim fails as a matter of law and the defendant is therefore entitled to summary judgment and does not need qualified immunity." *Marvin*, 2007 WL 4232968 at *8 (citing *Scott*, 127 S.Ct. at 1779).

Defendants Anderson, Pike, and Bishop argue that qualified immunity protects them because they did not, as a matter of law, have the authority to make the promotion decisions at issue. Essentially, defendants Anderson, Pike, and Bishop argue that the allegations do not show that they—as opposed to the defendants who did have the authority to promote—violated a constitutional right.

Metro Charter § 8.204 provides that "[a] vacancy in any office, position or employment

7

in the [police] department shall be filled by appointment of the chief of police."[4] (*See* Docket No. 12, Ex. 1). Under § 8.204, it was Chief Ronal Serpas—incidentally, another defendant in this case—and not defendants Anderson, Pike, or Bishop who had the legal authority to decide who should be promoted and who should not. Accordingly, defendants Anderson, Pike, and Bishop, as a matter of law, could not have discriminated against the plaintiffs by failing to promote them.

The plaintiffs cite several cases involving supervisory liability under § 1983 in favor of their contention that defendants Anderson, Pike, and Bishop can be held liable, even in the absence of the authority to make the decisions in question. *See, e.g., Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (involving defendants who acted as "direct supervisor" and "supervisor" over the acting official); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (holding that supervisory liability did not apply); *Leary v. Daeschner*, 228 F.3d 729, 740 (6th Cir. 2000) (holding that a supervisor could be held liable if "he encouraged his subordinates" to commit unconstitutional acts).

These cases are inapposite; they involve defendants with supervisory authority over other employees who committed constitutional violations, and not defendants who were subordinate to the acting official. Although "merely having the right to control employees is not enough," *Leary*, 228 F.3d at 740, it nevertheless remains the case that employees who are *subordinate to* the acting employee cannot be held liable on a *supervisory* basis. It should go without saying that defendants Anderson, Pike, and Bishop—each holding the position of deputy chief—could

---

[4]The court may take judicial notice of the Metro Charter, as a public record, without converting the pending motion to dismiss into a motion for summary judgment. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 644 (6th Cir. 2001).

8

not have exercised supervision over Chief Serpas or to have directed, by tacit approval or otherwise, his decisions. The plaintiffs have simply provided no case law for supporting their contention that a subordinate lacking the authority to make a hiring decision can be held liable for that decision under § 1983. Moreover, the plaintiffs do not allege any facts indicating that these defendants had any involvement in the decisions at issue. Accordingly, the § 1983 claims against defendants Anderson, Pike, and Bishop will be dismissed.

### III.    Redundant Official Capacity Claims

In addition to their claims against the Metropolitan Government of Nashville and Davidson County, the plaintiffs have also named Deputy Chiefs Anderson, Pike, and Bishop in their official capacities as defendants. The plaintiffs state that the defendants "have cited no reason why an official capacity suit against the official should be dismissed because the employer has been sued as well as the employee." In fact, defendants Anderson, Pike, and Bishop cite *Claybrook v. Birchwel*l, 199 F.3d 350, 355 n. 4 (6th Cir. 2000) ("An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents.") and *Frost v. Hawkins Co. Bd. of Ed.*, 851 F.2d 822, 827 (6th Cir. 1988) ("[O]fficial capacity claims are essentially claims against the entity itself."). These cases do articulate a reason for dismissing the official capacity claims—namely, that they are duplicative of the claims against the Metropolitan Government.

The plaintiff seems to misunderstand the Sixth Circuit's statement in *Frost* that "[p]ersonal capacity actions (which are sometimes referred to as individual-capacity actions) and official capacity actions are both permissible under section 1983." *Id.* at 827, n. 4 (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)). The issue is not whether official capacity claims are

9

duplicative of individual capacity claims, but whether they are duplicative of claims against the public entity. It is the very fact that official capacity claims are treated as claims against the public entity that they *are not* duplicative of individual capacity claims. *See Kentucky v. Graham*, 473 U.S. at 166 (an official capacity suit "is *not* a suit against the official personally, for the real party in interest is the entity") (emphasis in original). Of course this means that such claims *are* duplicative of claims against the public entity. *See, e.g., Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials."); *Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) ("Actually there is one defendant—the city—not two; for the complaint names the major as a defendant in his official capacity only, which is the equivalent of suing the city."). The basis for dismissing the official capacity claims is quite simple: they are duplicative of the claims against the Metropolitan Government. Accordingly they will be dismissed.

## IV.  Liability Under the Tennessee Human Rights Act

Defendants Anderson, Pike, and Bishop have challenged this court's exercise of jurisdiction over the THRA claims. The court finds that its exercise of supplemental jurisdiction is proper; nevertheless, the claims will be dismissed on their merits.

### A.  Supplemental Jurisdiction

Notwithstanding that the court will dismiss all of the federal claims against defendants Anderson, Pike, and Bishop, supplemental jurisdiction as to the THRA claims may be proper under 28 U.S.C. § 1367, which provides:

10

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. *Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties*.

28 U.S.C. § 1367(a) (emphasis added). Analysis under § 1367(a) is to be undertaken in view of the complaint at the time of removal; accordingly, the dismissal of the federal claims announced in this opinion would not foreclose the possibility of supplemental jurisdiction. *See Davet v. City of Cleveland*, 456 F.3d 549, 553 (6th Cir. 2006) ("[S]upplemental jurisdiction is a doctrine of discretion and . . . dismissal of ancillary state-law claims when the federal-law claims are no longer part of the case is not mandatory.") (internal quotations omitted).

Following the dismissal of the federal claims involved in the presently pending motions, there will remain equal protection claims under § 1983 and Title VII claims against the Metropolitan Government and Police Chief Ronal Serpas. Accordingly, supplemental jurisdiction exists as to the THRA claims against defendants Anderson, Pike, and Bishop, so long as those claims "are so related" to the remaining § 1983 and Title VII claims that "they form part of the same case or controversy." *Id*. "Claims form part of the same case or controversy when they 'derive from a common nucleus of operative facts.'" *Harper v. AutoAlliance Intern., Inc.*, 392 F.3d 195, 209 (6th Cir. 2004) (quoting *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir. 1996)). The THRA claims and the federal claims in this case do derive "from a common nucleus of operative facts." *See Ahearn*, 100 F.3d at 454-55. The THRA claims challenge the same hiring decisions as the federal claims, and on the same grounds—that, through use of the "slide-banding" method, the decisions were discriminatory on the basis of sex and race. Accordingly, supplemental jurisdiction exists under

11

§ 1367(a).

As a matter of discretion, supplemental jurisdiction may, nevertheless, be declined in the following situations:

> (1) the claim raises a novel or complex issue of State law.
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *see also Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 359 (6th Cir. 2004) ("[W]hen all federal claims have been dismissed before trial, the best course is to remand the state law claims to the state court from which the case was removed."); *Baer v. R & F Coal Co.*, 782 F.2d 600, 603 (6th Cir. 1986) ("[P]endant jurisdiction is a doctrine of discretion, not of plaintiff's right.") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

None of the justifications set forth in § 1367(c) for remand apply to the case at hand. The THRA claims do not raise complex issues of state law or predominate over the federal claims, and the court has not dismissed all of the claims over which it has original jurisdiction, although it has dismissed all such claims pertaining to defendants Anderson, Pike, and Bishop. Finally, there are no exceptional circumstances or other compelling reasons for declining jurisdiction over the THRA claims. Accordingly, the court retains jurisdiction over the THRA claims.

### B. Sufficiency of Allegations

Nevertheless, the THRA claims must be dismissed under Rule 12(b)(6). The allegations in the Amended Complaint do not contain "enough facts to state a claim to relief that is plausible

12

on its face." *Twombly*, 127 S.Ct. at 1974; *see also United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007) ("[T]he facts alleged in the complaint need not be detailed, although a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.") (internal quotations omitted).

The only allegations as to the THRA claims in the fact section of the Amended Complaint are that the defendants "authorized [the] slide banding method to be used in this manner that deprived the Plaintiffs of equal protection under the United States Constitution and constituted a violation of the Tennessee Human Rights Act." (Docket No. 33 at ¶ 16) Similarly, the only allegations as to those claims in the "causes of action" section of the complaint is as follows: "Plaintiffs, William L. Johnson and Julian Moore, would state that the Defendants' actions in using a slide banding procedure to allow police officers to be promoted based upon their race and sex as opposed to being based on merit, is in violation of the Tennessee Human Rights Act, Tenn. Code. Ann. § 41-21-401, et seq." (*Id*. at ¶ 19). No other allegations or factual assertions in the Amended Complaint mention the THRA explicitly; however, the Amended Complaint does state that the defendants "aided and abetted each other." (*Id*. at ¶ 20).

Because defendants Anderson, Pike, and Bishop served as deputy chiefs of police, as discussed above, they lacked the legal authority to make the actual promotion decisions at issue in this case. (*See* Metropolitan Charter provisions §§ 8.201-04, Docket No. 12, Ex. 2) Accordingly, any liability under the THRA for those defendants would have to fall under that statute's statement that "[i]t is a discriminatory practice" to "[a]id, abet, incite, compel or command a person to engage in any of the acts or practices declared discriminatory by this

13

chapter." Tenn. Code Ann. § 4-21-301. The plaintiffs, however, have failed to allege any facts that would demonstrate such aiding and abetting, apart from the allegation in paragraph 20, quoted above, which is, if anything, less specific than the statutory language itself. As the Supreme Court explained in its *Twombly* decision, the plaintiff's obligation to state a claim for relief "requires more than labels and conclusions, and a formal recitation of the elements of a cause of action will not do." 127 S.Ct. at 1965.

The Tennessee Supreme Court has held that liability for "aiding and abetting" under the THRA requires that "the defendant knew that his companion's conduct constituted a breach of a duty, and that he gave substantial assistance or encouragement to them in their acts." *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 835 (Tenn. 1997), *overruled on other grounds*, *Parker v. Warren County Util. Dist.*, 2 S.W.3d 170 (Tenn. 1999). That is, in order for a defendant to be liable for "aiding and abetting," under the THRA, there must have been "affirmative conduct," and, accordingly, "[f]ailure to act or mere presence during the commission of [the] tort is insufficient" for liability. *Id.* at 836; *see also McNeail-Turnstall v. Marsh USA*, 307 F. Supp. 2d 955 (W.D. Tenn. 2004) (liability for aiding and abetting "requires distinct conduct that aids or abets discrimination by the employer, as when, for example, the individual defendant prevents the employer from taking corrective action"); *Crutchfield v. Aerospace Ctr. Support*, 202 F.3d 267, 1999 WL 1252899 at *2 (6th Cir. 1999) (unpublished) (affirming summary judgment on a THRA claim for aiding and abetting because "[t]he record is devoid of any proof that [the defendant] aided, abetted, incited, compelled, or commanded *another person* to engage a in discriminatory act against" the plaintiff).

The plaintiffs point out that § 4-21-301 creates causes of action not only for "aiding and

14

abetting" but also for "inciting, compelling or commanding" another person to engage in discrimination. But the plaintiffs have failed to allege, even in a conclusory manner, that defendants Anderson, Pike, and Bishop incited, compelled, or commanded any other person to discriminate. The plaintiffs' allegations for "aiding and abetting" liability are vague and conclusory and, without additional factual allegations indicating that defendants Anderson, Pike, and Bishop actually authorized or advocated on behalf of the "slide band method" to another Metro employee, the plaintiffs have failed to state a claim against those defendants under the THRA. Accordingly, the THRA claims against defendants Anderson, Pike, and Bishop will be dismissed.[5]

## CONCLUSION

For the reasons stated herein, the defendants' motions to dismiss will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[5] The plaintiffs have conceded that the Metropolitan Police Department is not an entity capable of being sued. *See Haines v. Metropolitan Government*, 32 F. Supp. 2d 991, 994 (M.D. Tenn. 1998). Accordingly, all claims against the Metropolitan Police Department will be dismissed.

15