# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

WILLIAM L. JOHNSON, *et al.*,    )
    )
    **Plaintiffs,**    )        **Case No. 3:07-0979**
    )        **Judge Trauger**
**v.**    )
    )        **Magistrate Judge Bryant**
METROPOLITAN GOVERNMENT OF )
NASHVILLE AND DAVIDSON    )
COUNTY, *et al.*,    )
    )
    **Defendants.**    )

_____

CONSOLIDATED WITH:

KEITH M. HOLLEY,    )
    )
    **Plaintiff,**    )        **Case No. 3:08-0031**
**v.**    )        **Judge Trauger**
    )
METROPOLITAN GOVERNMENT OF )    **Magistrate Judge Bryant**
NASHVILLE AND DAVIDSON    )
COUNTY, *et al.*,    )
    )
    **Defendants.**    )

## MEMORANDUM

The defendant has filed a Motion to Dismiss, (Docket No. 68) to which the plaintiff has responded, (Docket No. 73) and the defendant has replied (Docket No. 82). For the reasons discussed herein, the defendant's motion will be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs William Johnson and Julian Moore serve as sergeants at Defendant

Metropolitan Nashville Police Department ("MNPD").[1]  In 2006, Mr. Johnson and Mr. Moore applied for promotions to the rank of lieutenant.  Approximately 150 candidates applied for the promotion.  The selection process involved two steps.  First, all candidates took a written test.  Second, the candidates who scored above a certain percentage were evaluated at the department assessment center to determine their fitness to serve as lieutenants.  Both Mr. Johnson and Mr. Moore scored high enough to be evaluated.  After the assessment, Mr. Moore ranked fifth and Mr. Johnson ranked ninth out of the 50 or 60 candidates who were evaluated.

Neither Mr. Johnson nor Mr. Moore were promoted to lieutenant, while several African-American candidates and female candidates were promoted to that position.  MNPD uses a "slide banding" method to determine which candidates to promote.  The plaintiffs allege that the slide banding method allowed African-American and female candidates to be promoted instead of white male candidates, regardless of their ranking following the written test and assessment.

On September 28, 2007, Mr. Johnson and Mr. Moore filed this action, alleging (1) violation of the Equal Protection Clause of the Fourteenth Amendment; (2) violations of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 41-21-401, et seq.; and (3) aiding and abetting racial and sexual discrimination.  (Docket No. 1)  On May 15, 2008, the plaintiffs filed an Amended Complaint, alleging (1) violation of the Equal Protection Clause of the Fourteenth Amendment; (2) violations of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 41-21-401, et seq.; (3) aiding and abetting racial and sexual discrimination; and (4)

---

[1] Unless otherwise noted, the facts have been drawn from the plaintiffs' Amended Complaint (Docket No. 62), in accordance with the court's task on a motion to dismiss to determine whether "[t]he factual allegations, assumed to be true . . . show entitlement to relief." League of United Latin Am. Citizens v. Bredesen, No. 03-5306, 2007 U.S. App. LEXIS 20556, at *6 (6th Cir. Aug. 28, 2007).

violation of Title VII of the Civil Rights Act of 1964. (Docket No. 62) Under Title VII, Mr. Johnson and Mr. Moore allege that the slide banding method had a disparate impact on white male candidates for promotion. On May 27, 2008, MNPD filed a motion under Federal Rule of Procedure 12(b)(6) to dismiss the disparate impact claim for failure to state a claim. (Docket No. 68)

## ANALYSIS

### I.     Motion to Dismiss Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will accept as true the facts as the plaintiff has pleaded them. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002); *Performance Contracting, Inc. v. Seaboard Sur. Co.*, 163 F.3d 366, 369 (6th Cir. 1998). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Indeed it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." *Scheuer*, 416 U.S. at 236. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz*, 534 U.S. at 514.

In *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964-65 (2007), the Supreme Court readdressed the pleading requirements under the federal rules. The Court

3

stressed that, although a complaint need not plead "detailed factual allegations," those allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, No. 03-5306, 2007 U.S. App. LEXIS 20556, at *6 (6th Cir. Aug. 28, 2007) (citing *Twombly*, 127 S.Ct. at 1965). Further, the Court observed that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that this substantive threshold is not achieved by conclusory assertions. *Twombly*, 127 S.Ct. at 1965 n.3.

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," *see E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965. With this standard in mind, the court turns to an analysis of the plaintiffs' claims.

## II.    Disparate Impact

An employee can allege discrimination under Title VII of the 1964 Civil Rights Act under two separate theories: disparate treatment and disparate impact. *E.g.*, *Phillips v. Cohen*, 400 F.3d 388, 397 (6th Cir. 2005). A disparate treatment claim requires an allegation that an

4

employer intentionally discriminated against an employee on the basis of race, sex, or other prohibited factors. *E.g.*, *Dunlap v. TVA*, 519 F.3d 626, 630 (6th Cir. 2008). By contrast, a disparate impact claim does not require a showing of intent to discriminate. *Id.* (citing *Griggs v. Duke Power Co.*, 401 U.S. 424 at 432 (1971)). Rather, the plaintiff must allege that a specific, facially neutral employment practice had an adverse effect on a certain group of employees because of their race, sex, religion, or national origin. *Id.*; 42 U.S.C.S. § 2000e-2(k)(1)(A)(i) (2008). As the plaintiffs only allege that the banding method utilized in MNPD's promotion process was used as justification for MNPD to intentionally discriminate on the basis of race and sex, they have not properly stated a disparate impact claim; accordingly, MNPD's motion to dismiss will be granted.

The Supreme Court first articulated the elements of a disparate impact claim in the seminal employment discrimination case of *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971). In *Griggs*, the Court allowed a Title VII claim against the defendant employer on the basis of the facially neutral requirement that all employees have high school diplomas. *Id.* at 427. While not intentionally discriminatory, this practice had the effect of discriminating against African-Americans, who at that time and place were less likely than whites to have graduated from high school. *Id.* at 430, 432. Rather than limit Title VII's reach to instances of intentional discrimination, the Court reasoned that Congress meant for it to cover the "consequences of employment practices, not simply the motivation." *Id.* at 432. Initially, all disparate impact cases addressed objective criteria like the diploma requirement in *Griggs*. *E.g. Connecticut v. Teal*, 457 U.S. 440, 444 (1982) (written examination); *Dothard v. Rawlinson*, 433 U.S. 321, 331 (1977) (height and weight requirements).

5

The Court ruled in *Watson v. Fort Worth Bank & Trust* that subjective or discretionary decisionmaking may constitute an employment practice and thus be subject to a disparate impact analysis under Title VII. 487 U.S. 977, 991 (1988).[2] In *Watson*, the plaintiff was consistently passed over for promotion in favor of white candidates. *Id.* at 982. Promotion decisions did not follow formal criteria but instead were based on the subjective judgment of the employees' supervisors. *Id.* Concerned that such decisions could involve "subconscious stereotypes and prejudices," the Court held that latent racism in workplace decisions was "a lingering form of the problem that Title VII was enacted to combat." *Id.* Further, the plaintiff could not show intentional discrimination in the individual decisions denying her applications for promotion but was rather challenging the promotion system that was based on discretion. *Id.* at 983-84. The Court reasoned that such claims might otherwise fall into a gap between allegations of overt discrimination, which were covered by disparate treatment claims, and the unintended results of objective criteria like the diploma requirement in *Griggs*. *See id.* at 989-90.

Following *Watson*, the plaintiff in *Phillips v. Cohen* alleged disparate impact in part on the basis of the defendant's use of "hazy selection criteria" for its promotion decisions. 400 F.3d 388, 398 (6th Cir. 2005). Among the steps in the complex promotion process, supervisors provided the human resources department with information on each employee who applied for the promotion in categories such as experience, awards, and performance review. *Id.* at 390-91. A hiring manager then chose which candidates to interview from among the highest ranked employees. *Id.* at 391. Plaintiffs alleged that the process had an adverse effect on minority

---

[2]A separate portion of the holding in *Watson* was superseded by the 1991 amendments to the Civil Rights Act, but the holding and reasoning cited herein remain good law. *See Phillips v. Cohen*, 400 F.3d 388, 397-98 (6th Cir. 2005); 42 U.S.C.S. § 2000e-2(k) (2008).

employees by allowing subjectivity and favoritism to influence the final decision. *Id.* at 398. The court found that this allegation was "appropriate" for disparate impact analysis. *Id.* Likewise, the court in *McCabe v. Champion International Corp.* held that the plaintiff had succeeded in pleading a disparate impact claim when he alleged that the managers to whom termination decisions were delegated "operated without any objective guidelines." No. 89-4021, 1990 U.S. App. LEXIS 18542, at *20 (6th Cir. Oct. 18, 1990). The delegation of "discretion to make subjective decisions" was a specific employment practice that could have an adverse effect. *Id.*

Whether challenging an objective or subjective practice, a disparate impact claim must allege that the practice itself is the cause of the adverse effect. *See, e.g.*, *Phillips*, 400 F.3d at 397. It is the challenged practice that, while facially neutral, "work[s] to eliminate" one group of employees from eligibility for promotion. *Id.* This discriminatory result is not intended, but the practice operates in a manner that is "functionally equivalent to intentional discrimination." *Watson,* 487 U.S. at 987.

By contrast, a claim that actually alleges intentional discrimination is evaluated under a disparate treatment analysis. *E.g. Phillips*, 400 F.3d at 398. The Sixth Circuit recently reiterated in *Phillips* that "[a] practice showing overt prejudice on the basis of a protected ground . . . must be challenged in a disparate treatment case." *Id.*; *see also Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 666 (1989) (Stevens, J., dissenting) (stating that the disparate impact analysis set out in *Griggs* "proved inapposite for analyzing an individual employee's claim . . . that an employer intentionally discriminated on account of race"). In *Shollenbarger v. Planes Moving & Storage*, the plaintiff alleged that defendant company's employment practices had a disparate

impact on female employees when those departments of the company that were comprised mainly of women were considered for downsizing. No. 1:03-cv-112-TSH, 2006 U.S. Dist. LEXIS 69966, at *13 (S.D. Ohio Sept. 27, 2006). The court rejected this argument, holding that the plaintiff's claim that the downsizing decisions targeted women amounted to an allegation of "a Machiavellian plan to discharge female employees and protect the male employees" and thus was "not the proper focus of a disparate impact analysis." *Id.* at *17.

Similarly, the Sixth Circuit held that the plaintiff in *Reminder v. Roadway Express, Inc.* failed to state a disparate impact claim when his complaint alleged that "a disparate proportion of those employees terminated . . . were over forty years of age." 215 F. App'x 481, 485 (6th Cir. 2007). The plaintiff only identified the general downsizing decisions, rather than any specific, facially neutral policy, as the source of this disparity. *Id.* The court held that such an allegation was "clearly" a disparate treatment claim. *Id.* The plaintiff in *Flatt v. Electric Research Manufacturing Corp.* likewise based her disparate impact claim on the assertion that her employer "had a 'practice' of 'running off' the women employees." No. 95-5119, 1996 U.S. App. LEXIS 31662, at *11 (6th Cir. Dec. 3, 1996). Since this allegation suggested an intent to discriminate, the court upheld dismissal of her claim. *Id.* at *10-*11. The court stressed that a plaintiff's argument that was "obviously directed at establishing a disparate treatment theory of discrimination . . . [did not] automatically entitle her to *also* proceed under a disparate impact theory." *Id.* at *11.

While disparate treatment and disparate impact are distinct claims, a plaintiff "may proceed on either theory or both theories, if the facts and evidence support either theory and if they are properly alleged." *Maddox v. IRS Data Center*, No. 87-1358, 1988 U.S. App. LEXIS

8

15616, at *8 (6th Cir. Nov. 21, 1988). For instance, the plaintiff in *McCabe* challenged both the defendant's use of discretion in employment decisions and the results of those decisions. *See* 1990 U.S. App. LEXIS 18542, at *20, *12-13. He alleged that decisions regarding which employees to fire were wholly subjective and that the defendant intentionally discriminated against older employees. *Id.* As such, the court affirmed judgment for him on both his disparate impact and disparate treatment claims. *Id.* at *19-*20.

In addition to dismissing disparate impact claims when the allegation actually supported a disparate treatment claim, courts have also dismissed disparate impact claims when the plaintiff merely made a conclusory statement that discrimination existed in the workplace and failed to identify a specific employment practice that allegedly had an adverse effect. *E.g. EEOC v. Honda of Am., Mfg., Inc.*, No. 2:06-cv-00233, 2007 U.S. Dist. LEXIS 37584, at *11 (S.D. Ohio May 23, 2007). In *Honda*, the court dismissed the plaintiff's claim because the complaint only challenged "those employment policies and practices at Defendant HAM that resulted in disparities between protected and non-protected classes" without any effort to define what "those practices" were. *Id.* at *11-*12. The plaintiff defended the sufficiency of her complaint by arguing that statistics showing a *prima facie* case of discrimination were not available, but the court rejected that argument as irrelevant because the defendant did not seek dismissal based on the failure to plead relevant statistics, but rather on the failure to identify a facially neutral employment practice.[3] *Id.* at *15.

---

[3] While a *prima facie* case for disparate impact often requires "relevant statistical analysis" proving that the challenged employment practice had an adverse effect on a certain group, *Dunlap*, 519 F.3d at 629, a plaintiff "need not *plead* a prima facie case of discrimination" to avoid dismissal, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (emphasis added); *accord Mongo v. Home Depot, Inc.*, No. 3:02-CV-2593-R, 2003 U.S. Dist. LEXIS 17557, at *6

9

Unlike the plaintiff in *Honda* who simply made the conclusory statement that disparities existed in the workplace, 2007 U.S. Dist. LEXIS 37584, at *11, Mr. Johnson and Mr. Moore identify two specific employment practices that they allege had an adverse effect on white males: the banding method and the captains' survey.[4]  However, their allegations regarding the banding method suggest intentional discrimination and thus support a disparate treatment, rather than disparate impact, claim.  While the allegations of subjective decisionmaking under the captains' survey are more persuasive, these allegations are not found in the complaint; the plaintiffs only present them in their response brief.  As all that remains is plaintiffs' conclusory statement that the banding method has a "disparate affect on white males," (Docket No. 62 at p. 5) they have not sufficiently stated a claim.

The plaintiffs' argument that MNPD used the banding method as "justification" to promote minorities over white males is a classic disparate treatment claim.  By claiming that MNPD "used a slide banding method . . . in such a manner to allow the black employees and the female employees to be promoted ahead of the white male employees," (Docket No. 62 at p. 3) the plaintiffs are alleging that MNPD made employment decisions on the basis of race and sex.  Similarly, the plaintiffs' statement that MNPD used its employment practices as "justification to promote the blacks and the females above the Plaintiffs" (Docket No. 73 at p. 8) suggests that

---

(N.D. Tex. Sept. 25, 2003) (holding that a disparate impact plaintiff "is not required to plead every element of his claim to survive a Rule 12(b)(6) dismissal," as long as he "plead[s] more than mere conclusory allegations").

[4] The plaintiffs rightfully argue that they need not make out a full *prima facie* case of discrimination in the pleadings.  *See Swierkiewicz*, 534 U.S. at 515.  However, such an argument is unnecessary here because MNPD does not base its motion to dismiss on the lack of a *prima facie* case.  *Cf. Honda*, 2007 U.S. Dist. LEXIS 37584, at *15.

10

MNPD intentionally discriminated against them based on those factors.  Rather than challenging the banding method itself, the plaintiffs are challenging the individual promotion decisions made after the candidates were banded.  Like the plaintiff in *Shollenbarger* who accused her employer of a "Machiavellian plan" to rid the workplace of female employees, 2006 U.S. Dist. LEXIS 69966, at *13, Mr. Johnson and Mr. Moore argue that MNPD refused to promote white male sergeants to lieutenant because it wanted a more diverse supervisor corps.  While the plaintiffs in *Griggs* focused on the "consequences of employment practices, not simply the motivation" behind employment decisions, 401 U.S. at 432, Mr. Johnson and Mr. Moore thus focus on the motivation of their employer in promoting minority candidates rather than white males like themselves.

The plaintiffs do not argue that the banding method had an adverse effect on white males because it allowed for subjectivity in promotion decisions.[5]  Unlike the plaintiff in *McCabe* who challenged both his employer's use of discretion in firing decisions and the results of those decisions, s*ee* 1990 U.S. App. LEXIS 18542, at *20, *12-*13, Mr. Johnson and Mr. Moore do not challenge the fact that MNPD *could* use discretion in promotion decisions, only *how* MNPD used its discretion in this instance.  They allege that MNPD ignored the objective criteria it gathered from the written examination and the assessment because of an intent to discriminate, not that it "operated without any objective guidelines" in making promotion decisions, *id.* at *20.

Moreover, the plaintiffs make no reference to the risk of latent racism in such decisions

---

[5]Mr. Johnson and Mr. Moore could have made such an argument, despite MNPD's pre-*Watson* interpretation of the disparate impact analysis.  Contrary to MNPD's assertion that a disparate impact claim could only challenge the use of objective criteria like the written test given to lieutenant candidates, *Watson* and its progeny clearly state that such claims can cover subjective or discretionary employment practices, *e.g.*, 487 U.S. at 991.

11

which concerned the Court in *Watson*, 487 U.S. at 990.  Unlike the plaintiff in *Watson*, Mr. Johnson and Mr. Moore already have a potential avenue for redress under Title VII; since they allege overt discrimination based on race, they can bring (and have brought) a disparate treatment claim.  As the Sixth Circuit held in *Flatt*, however, the fact that Mr. Johnson and Mr. Moore have plead a disparate treatment claim does not "automatically entitle [them] to *also* proceed under a disparate impact theory," 1996 U.S. App. LEXIS 31662, at *11.

By contrast, the plaintiffs do somewhat convincingly argue a disparate impact claim in their response brief when they allege alternatively that the captains' survey itself had an adverse effect on white male candidates for promotion.  Like the managers in *Watson* who made promotion decisions based on their own discretion rather than on objective criteria, *id.* at 982, the captains made subjective assessments of plaintiffs and the other candidates.  Mr. Johnson and Mr. Moore further allege that MNPD provided neither proper instructions for completing the surveys nor consistent information about the candidates, recalling the managers in *McCabe* who "operated without any objective guidelines," 1990 U.S. App. LEXIS 18542, at *20, and the "hazy selection criteria" which the court in *Phillips* found sufficient to support a disparate impact claim, 400 F.3d at 398.

However, the plaintiffs do not refer to the captains' survey in their complaint; rather, they address it for the first time in their response brief.  As such, the court cannot consider any of the facts and allegations regarding the survey.  *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001) ("The district court, in reviewing a motion to dismiss, may not consider matters beyond the complaint."); 2 *Moore's Federal Practice*, § 12.34 (Matthew Bender 3d ed. 2008) ("The court may not . . . take into account additional facts asserted in a memorandum opposing

12

the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").

While Mr. Johnson and Mr. Moore did present their argument that the survey was an

employment practice with an adverse effect in their proposed Fourth Amended Complaint, this

court subsequently denied their motion to amend (Docket No. 84) and "it is axiomatic that the

complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car

Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (citations omitted).[6]


## CONCLUSION

For the reasons stated herein, the defendant's Motion to Dismiss will be granted. An

appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[6] MNPD also argues that the plaintiffs cannot properly bring a disparate impact claim because white men are not a protected class. As MNPD's motion to dismiss will be granted on other grounds, the court need not address this argument. For a background discussion of reverse discrimination claims in the disparate impact context, see generally Charles A. Sullivan, *The World Turned Upside Down?: Disparate Impact Claims By White Males*, 98 Nw. U. L. Rev. 1505, 1524-1533 (2004).

13