```
                IN THE UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF TENNESSEE
                         NASHVILLE DIVISION
```

WILLIAM L. JOHNSON, et al.,        )
                                   )
        Plaintiffs,                )
                                   )
             v.                    )    NO. 3:07-0979
                                   )    Judge Trauger/Bryant
METROPOLITAN GOVERNMENT OF         )
NASHVILLE and DAVIDSON COUNTY,     )
et al.,                            )    **CONSOLIDATED WITH:**
                                   )
        Defendants.                )


KEITH M. HOLLEY,                   )
                                   )
        Plaintiffs,                )
                                   )
             v.                    )    NO. 3:08-0031
                                   )    Judge Trauger/Bryant
METROPOLITAN GOVERNMENT OF         )
NASHVILLE and DAVIDSON COUNTY,     )
et al.,                            )
                                   )
        Defendants.                )

                        <u>MEMORANDUM AND ORDER</u>

Civil Service Commissioner Michael Allen, a nonparty witness, has moved to quash plaintiffs' subpoena requiring him to appear for deposition in this case (Docket Entry No. 88). As grounds for his motion, Mr. Allen asserts that his testimony (1) is privileged under a privilege variously known as the "deliberative process privilege," the "legislative privilege," or the "mental process privilege," and (2) is irrelevant, especially since the Court has dismissed plaintiffs' disparate impact claim.

Plaintiffs have filed their response in opposition (Docket Entry Nos. 95 and 98), and Mr. Allen has filed a reply

(Docket Entry No. 103). Plaintiffs thereafter filed their own reply (Docket Entry No. 124).

For the reasons stated below, the undersigned Magistrate Judge finds that Mr. Allen's motion to quash should be **GRANTED.**

## Summary of Pertinent Facts

Plaintiffs are police officers employed by the Metropolitan Government of Nashville and Davidson County, Tennessee. Plaintiffs allege that they were wrongfully denied promotion from sergeant to the rank of lieutenant by the Metropolitan Nashville Police Department ("MNPD") due to illegal employment discrimination. Specifically, plaintiffs assert MNPD wrongfully promoted African-American and female candidates in lieu of plaintiffs without regard to objective test results and evaluation. Plaintiffs allege (1) violation of the Equal Protection Clause of the Fourteenth Amendment; (2) violations of the Tennessee Human Rights Act, Tenn. Code Ann. § 41-21-401 et seq.; (3) aiding and abetting sexual discrimination; and (4) violation of Title VII of the Civil Rights Act of 1964.

Mr. Allen was serving as a member of the Metropolitan Civil Service Commission on April 11, 2006, when that body voted to approve a revision of the Civil Service policy governing promotions within MNPD (Docket Entry No. 37-2). This revision in policy was proposed jointly by the Metropolitan Human Resources Department, CWH Research[1] and MNPD. The members of the Civil Service

---

[1] From the record it appears that CWH Research was an outside company employed by MNPD to create the written test, the "assessment center evaluation," and the list of qualified candidates for promotion within MNPD (Docket Entry No. 103, p. 3).

2

Commission voted 3 to 1 in favor of approving the proposed revision, with Mr. Allen casting the sole negative vote. (Id.)

The Metropolitan Civil Service Commission is part of the executive branch of the metropolitan government, and Commission members are appointed by the Metropolitan Mayor (Docket Entry No. 37, Exhibit A, § 12.02). Among its duties, the Commission is charged to "[r]eview, approve, revise or modify any action taken by the director of personnel." (Id., § 12.03(e))

Following approval of this revised promotion policy by the Metro Civil Service Commission in April 2006, the MNPD on September 29, 2006, released the promotions list promoting other candidates but not plaintiffs, giving rise to plaintiffs' claims. Significantly, there is no claim that Mr. Allen or any other member of the Civil Service Commission participated in making the promotion decisions about which plaintiffs complain.

## **Analysis**

Quoting from their papers, plaintiffs seek to question Mr. Allen at deposition on the following ten topics:

1) Any statements made to him, from him or which he overheard from Chief Serpas or any other upper ranking officer or supervisor at the police department that this promotional system was being adopted so that minorities could be promoted over the white and/or majority officers.

2) Any statements which he made, he overheard or was made to him with regard to why this new promotional policy was enacted in 2006.

3

3) Why CWH was hired by the Defendant and the recommendations made to the Defendant by CWH.

4) His internal thought processes with regard to this new promotional policy.

5) Questions with regard to statements made by Civil Service Commissioner Michael Allen after the adoption of the policy to the press about the adoption of the policy and his subjective thoughts about whether the system adopted was fair based on race.

6) Whether an anonymous survey was a part of the promotional policy adopted by the Defendant.

7) Whether the policy required all promotional testing and evaluation materials to be saved.

8) What was the past history of the Defendant with regard to promoting minority candidates in the police department.

9) What was the Defendant's and Commission (sic) Allen's reaction to the MGT[2] Report and what steps, if any, were taken in response to the MGT Report.

10) What was the racial data used to justify the new promotional process.

(Docket Entry No. 95, pp. 3-4).

Movant Allen, in support of his motion to quash plaintiffs' deposition subpoena, argues that the matters about which plaintiffs seek to question him are (1) privileged as the result of his official capacity as a member of the Metro Civil Service Commission, and (2) irrelevant, especially because the

---

[2] MGT allegedly issued a report critical of the MNPD's old promotional process.

Court has previously dismissed plaintiffs' claim that the revised promotion policy subjected them to unlawful discrimination due to its disparate impact upon them (Docket Entry Nos. 85 and 86).

The "deliberative process," "legislative," or "mental process" privilege. Rule 501 of the Federal Rules of Evidence states in pertinent part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

The Supreme Court has stated that "[t]he principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo-American law." Bogan v. Scott-Harris, 523 U.S. 44, 48 (1998). The Court has held that state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities. See Tenney v. Brandlove, 341 U.S. 367, 372-75 (1951) (state legislators); Lake County Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391 (1979) (regional legislators). In Bogan, the Court expressly extended legislative immunity to local legislators, holding as follows:

> Because the common law accorded local legislators the same absolute immunity it accorded legislators at other levels of government, and because the rationales for such immunity are fully applicable to local legislators, we now hold that local

5

legislators are likewise absolutely immune from
suit under § 1983 for their legislative activities.

523 U.S. at 49. Furthermore, this absolute legislative immunity "attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Bogan, 523 U.S. at 54 (quoting Tenney, 341 U.S. at 376).

The distinction between acts that are "legislative," on one hand, and those that are "ministerial" or "administrative," on the other, depends on the nature of the act.

> Whether an act is legislative turns on the nature
> of the act, rather than on the motive or intent of
> the official performing it. The privilege of
> absolute immunity "would be of little value if
> [legislators] could be subjected to the cost and
> inconvenience and distractions of a trial upon a
> conclusion of a pleader, or to the hazard of a
> judgment against them based upon a jury's
> speculation as to motives." Tenney, 341 U.S., at
> 377, 71 S.Ct., at 788 (internal quotation marks
> omitted). Furthermore, it simply is "not consonant
> with our scheme of government for a court to
> inquire into the motives of legislators." Ibid.

Bogan, 523 U.S. at 54-55. Finally, the court in Bogan "recognized that officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." 523 U.S. at 55 (citing Supreme Court of Va. v. Consumers Union, 446 U.S. 719, 731-34 (1980)).

The Court of Appeals for the First Circuit set forth a two-test analysis to distinguish between protected legislative proceedings and actions that are administrative in nature, which are not protected.

6

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are "legislative facts," such as "generalizations concerning a policy or state of affairs," then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the "particularity of the impact of the state of action." If the action involves establishment of a general policy, it is legislative; if the action "single[s] out specifiable individuals and affect[s] them differently from others," it is administrative.

Cutting v. Muzzey, 724 F.2d 259, 261 (1st Cir. 1984).

Upon considering the foregoing authorities, the undersigned Magistrate Judge finds that the actions of movant Allen in voting as a member of the Metropolitan Civil Service Commission on a proposed revision of a policy governing promotions within the police department generally, as contrasted with a proposed personnel action affecting only specific individuals, constituted legislative immunity, and that the testimonial privilege claimed here is properly invoked as a derivative from such immunity.

In an extensive discussion of the legislative immunity, the District Court for the District of New Hampshire noted that a variety of jurisdictions hold that "[l]egislative immunity not only protects state [and local] legislators from civil liability, it also functions as an evidentiary and testimonial privilege." Miles-Un-Ltd., Inc. v. Town of New Shoreham, 917 F.Supp. 91, 98 (D.N.H. 1996)(quoting Marylanders for Fair Representation, Inc. v.

7

Schaefer, 144 F.R.D. 292, 297 (D. Md. 1992); see also Cunningham v. Chapel Hill, ISD, 438 F.Supp.2d 718 (E.D. Tex. 2006), and cases cited therein. While this proposition does not appear to have been established in any decision of the Sixth Circuit,[3] the authorities cited above persuade the undersigned of its validity; its applicability in the case at bar is discussed below.

In opposition to movant Allen's assertion of privilege, plaintiffs advance three arguments: (1) Allen waived the privilege by speaking to members of the press; (2) the Civil Service Commission serves merely a human resources function, administrative rather than legislative in nature, and is therefore not entitled to privilege; and (3) the privilege does not exist in cases alleging violations of Title VII and the Equal Protection Clause.

Plaintiffs cite cases supporting the proposition that the legislative privilege can be waived. Alexander v. Holden, 66 F.3d 62, 68 n.4 (4th Cir. 1995); Virgin Islands v. Lee, 775 F.2d 514, 520 n.7 (3d Cir. 1985); Marylanders for Fair Representation v. Schaefer, 144 F.R.D. 292, 298 (D. Md. 1992). Plaintiffs further argue that movant Allen has waived a claim of privilege by comments he made to local news media (Docket Entry No. 98-1, pp. 3 and 10).

---

[3]The Sixth Circuit has recognized, in the context of an Equal Protection challenge to a city's decision to effectuate racially biased opposition to a low-income housing development by allowing a referendum election, that it would be improper to scrutinize the motivations of "people acting in a legislative capacity." Buckeye Community Hope Found. v. City of Cuyahoga Falls, 263 F.3d 627, 638 (6th Cir. 2001), rev'd in part on other grounds, 538 U.S. 188 (2003).

8

It appears that the privilege is subject to a knowing, affirmative waiver by the legislator. However, the undersigned Magistrate Judge finds that the meager comments attributed to Mr. Allen in this record are insufficient to constitute a knowing, affirmative waiver of the privilege. In marked contrast, the three cases above, cited by plaintiffs, describe situations in which legislators appeared voluntarily to give sworn testimony, and were thereby deemed to have waived the privilege.

Plaintiffs next assert that the Metro Civil Service Commission serves merely in an administrative role performing a human resources function and is not entitled to legislative privilege. As discussed above in this memorandum, courts distinguish between "legislative" functions and "administrative" functions based upon the nature of the function, Brogan, 523 U.S. at 54-55, and hold that public officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions. Id. at 55. If the underlying facts upon which the decision is based are generalizations concerning a policy, the decision is legislative; if the facts are more specific, relating to particular individuals or situations, the decision is administrative. Cutting, 724 F.2d at 261. If the action involves establishment of a general policy, it is legislative; if the action singles out specific individuals and affects them differently from others, the action is administrative.

9

Id.

Here, the members of the Civil Service Commission voted to adopt a revised promotions policy applicable to all police officers seeking promotion, and their action clearly was legislative in nature. Although the Commission may also be called upon to approve specific personnel actions, such as suspensions, demotions, or separations from service of particular employees, which would be administrative in nature, that does not change the legislative character of the subject vote. Accordingly, the undersigned Magistrate Judge is not persuaded by plaintiffs' argument that the Civil Service Commission performs an exclusively administrative function.

Plaintiffs further argue that the legislative process privilege does not apply in cases alleging Title VII or Equal Protection Clause violations. Plaintiffs cite several cases for the proposition that the privilege is not applicable in cases raising Title VII or Equal Protection Act claims involving allegations of intentional discrimination by public officials (Docket Entry No. 95, pp. 11-14). However, there is no allegation in this case that movant Allen or other members of the Civil Service Commission engaged in intentional misconduct in voting to approve the proposed revisions to promotions policy. Moreover, the Court has already found that the Amended Complaint fails to state a claim for disparate impact discrimination (Docket Entry Nos. 85

and 86). Plaintiffs do charge that Chief Serpas, and perhaps other MNPD officers who participated in the actual promotion selection, intentionally discriminated against plaintiffs. That claim, however, does not place movant Allen's intent in question or nullify his claim of legislative privilege.

<u>Relevance</u>. In his reply, movant Allen raises the additional ground that the Court's dismissal of plaintiffs' disparate impact claim renders Allen's testimony irrelevant to any claim remaining in the case. In response, plaintiffs argue that evidence of discriminatory intent is highly relevant to their remaining disparate treatment claim. While that is true in a general sense, there is no claim that members of the Civil Service Commission acted with discriminatory intent in voting to approve the revised promotion policy. (In fact, Mr. Allen, the movant here, cast the sole vote **against** the proposed revision.) Plaintiffs claim instead that Chief Serpas, and perhaps others within MNPD, intentionally discriminated against plaintiffs in favor of African-American and female officers in awarding promotions under the revised policy. Plaintiffs also appear to make the argument that MNPD and perhaps its outside consultant, CWH Research, proposed the revision in the promotion policy in order to obtain the discretion necessary to favor underrepresented minorities in police department promotions.

In the absence of any claim that movant Allen or other

11

members of the Metropolitan Civil Service Commission acted with discriminatory intent in voting on the proposed revision to the MNPD promotion policy, the undersigned Magistrate Judge finds that the topics about which plaintiffs seek to question Mr. Allen are either (1) subject to the legislative privilege, (2) readily ascertainable from reading the promotion policy itself, (3) readily obtainable directly from other available sources, or (4) irrelevant and not calculated to lead to the discovery of admissible evidence.

For the foregoing reasons, the undersigned finds that Mr. Allen's motion to quash should be **GRANTED**.

It is so **ORDERED**.

s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge