IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WILLIAM L. JOHNSON, et al.,            )
                                       )
          Plaintiffs,                  )
                                       )
          v.                           )    NO. 3:07-0979
                                       )    Judge Trauger/Bryant
METROPOLITAN GOVERNMENT OF             )
NASHVILLE and DAVIDSON COUNTY,         )
et al.,                                )    **CONSOLIDATED WITH:**
                                       )
          Defendants.                  )


KEITH M. HOLLEY,                       )
                                       )
          Plaintiffs,                  )
                                       )
          v.                           )    NO. 3:08-0031
                                       )    Judge Trauger/Bryant
METROPOLITAN GOVERNMENT OF             )
NASHVILLE and DAVIDSON COUNTY,         )
et al.,                                )
                                       )
          Defendants.                  )

## MEMORANDUM AND ORDER

Third-party witness Christian Bottorff and his employer, *The Tennessean*, have filed their motion to quash and for protective order (Docket Entry No. 90), seeking a protective order providing that Bottorff's deposition not be taken. Plaintiffs have responded in opposition (Docket Entry No. 110).

For the reasons stated below, the undersigned Magistrate Judge finds that the motion of Bottorff and *The Tennessean* should be **GRANTED.**

## Statement of the Case

Plaintiff police officers have filed their complaint against their employer, the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro"), alleging that they were wrongfully denied promotion within the Metropolitan Nashville Police Department ("MNPD") due to illegal employment discrimination. Specifically, plaintiffs, who are white males, allege that defendants promoted less qualified African-American and female officers instead of plaintiffs in order to increase racial and gender diversity among upper ranks of MNPD officers.

## The Subject Motion

Christian Bottorff is a newspaper reporter employed by *The Tennessean*, a daily newspaper of general circulation in Nashville and middle Tennessee. Mr. Bottorff wrote an article that was published in *The Tennessean's* April 2, 2007, issue entitled: "White officers say Metro police promotion policy unfair." (Docket Entry No. 90-2). In general, this article describes the opinions of some persons that the promotions policy of the MNPD, which had been revised in 2006, unfairly favored minorities by granting MNPD officials discretion to base promotion decisions on factors other than purely objective test results. Plaintiff Johnson, an attorney representing the Teamsters union, and the head of the Black Police Association are quoted in this article. In addition, the article contains three quotations attributed to Don Aaron, identified in the article as spokesman for the MNPD.

Plaintiffs served a deposition subpoena on Mr. Bottorff which commanded that he bring with him to the deposition "[a]ll

records with regard to the article written by you dated April 2, 2007 with regard to the Metropolitan Police Department promotional system" (Docket Entry No. 90).

Mr. Bottorff and his employer, *The Tennessean*, have filed their motion to quash this subpoena and they seek a protective order providing that the deposition of Mr. Bottorff should not be taken. As grounds, they assert that Mr. Bottorff's testimony is subject to a qualified journalist's privilege for reporters in civil proceedings. In response, plaintiffs maintain that by Mr. Bottorff's deposition they are "seeking whether the statement attributed to Don Aaron was true and accurate and did Don Aaron make that statement. Further, Plaintiffs seek information as to the context of the word 'diversity' as used in this article." (Docket Entry No. 110, p. 9). Plaintiffs assert that they have attempted to gain this information directly from Mr. Aaron when they took his deposition, but they were unsuccessful in doing so. Although not explicitly stated, it appears that plaintiffs argue that their need to obtain the subject information from Mr. Bottorff trumps the application of any qualified privilege that may exist in this case.

## Analysis

In cases in which subject matter jurisdiction is based upon federal question, "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by principles of the common law as they may have been interpreted by the courts of the United States in the light or reason and experience." Fed.R.Evid.501.

The parties have not cited any Sixth Circuit decision that explicitly recognizes a news reporter's privilege in civil cases nor has the undersigned Magistrate Judge found any. Nevertheless, "nine of the twelve federal circuit courts of appeal have recognized a qualified privilege for reporters and their sources in civil proceedings." <u>Southwell v. Southern Poverty Law Center</u>, 949 F. Supp. 1303 (W.D. Mich. 1996)(citing cases). Moreover, in a criminal case in which it declined to recognize a reporter's privilege, the Sixth Circuit has stated the general principle that courts should "make certain that the proper balance is struck between freedom of the press and the obligation to give relevant testimony." <u>In re Grand Jury Proceedings</u>, 810 F.2d 580, 586 (6th Cir. 1987).

The District Court for the Eastern District of Michigan, reviewing Sixth Circuit authority, declined to find a qualified privilege for a news reporter, but nevertheless stated as follows: "Given the important role that news gathering plays in a free society, courts must be vigilant against attempts by civil litigants to turn non-party journalists or newspapers into their private discovery agents." <u>In re DaimlerChrysler AG Securities Litigation</u>, 216 F.R.D. 395, 406 (E.D. Mich. 2003). The <u>DaimlerChrysler</u> court quoted the following cautionary language from a Second Circuit decision:

> If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through the press files in search of information supporting their claims. The resulting

4

> wholesale exposure of press files to litigant
> scrutiny would burden the press with heavy costs of
> subpoena compliance, and could otherwise impair its
> ability to perform its duties – particularly if
> potential sources were deterred from speaking to
> the press, or insisted on remaining anonymous,
> because of the likelihood that they would be sucked
> into litigation.
>
>            *   *   *
>
> And permitting litigants unrestricted, court-
> enforced access to journalistic resources would
> risk the symbolic harm of making journalists appear
> to be an investigative arm of the judicial system,
> the government, or private parties."

216 F.R.D. at 406 (quoting <u>Gonzales v. Nat'l Broadcasting Co., Inc.</u> 194 F.3d 29, 35 (2d Cir. 1999).

From a review of the foregoing cases, it is clear that the Sixth Circuit has not recognized a constitutional qualified privilege for news reporters in civil cases. Moreover, comments in dicta in Sixth Circuit decisions cast doubt whether the Sixth Circuit would find such a privilege if the question were squarely presented. Therefore, the undersigned Magistrate Judge is unwilling to find a qualified privilege in favor of a news reporter in this case. Instead, the court will conduct a balancing of plaintiffs' need for the requested discovery against Mr. Bottorff and <u>The Tennessean's</u> need for protection, as is required whenever a protective order is sought under Rule 26(c), Federal Rules of Civil Procedure. Rule 26(c) provides in pertinent part that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

or expense," including an order "forbidding the disclosure or discovery."

Rule 26(b)(2) of the Federal Rules of Civil Procedure lists three factors to be considered by the court in limiting the frequency or extent of discovery: (1) whether the discovery sought "can be obtained from some other source that is more convenient, less burdensome or less expensive;" (2) whether the party seeking discovery "has had ample opportunity to obtain the information by discovery in the action;" and (3) whether "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Using these factors, the Court analyzes the discovery at issue here.

Availability from alternate sources. Given that plaintiffs are seeking discovery from Mr. Bottorff indicating "whether the statement [in the article] attributed to Don Aaron was true and accurate and did Don Aaron make that statement," and "information as to the context of the word 'diversity' as used in this article," a logical alternative source for this information is Mr. Aaron himself. Plaintiffs have in fact deposed Mr. Aaron, and they questioned him about the statements attributed to him in Mr. Bottorff's article (Docket Entry No. 110-2, pp. 12-15). Plaintiffs' counsel failed to ask Mr. Aaron directly whether he was

6

misquoted in the article, but when she asked him whether he said to Mr. Bottorff words approximating a quotation attributed to Mr. Aaron, Mr. Aaron replied: "I would probably suspect that I did." (Id. at p. 13 (deposition page 51)). In addition, plaintiffs' counsel questioned Mr. Aaron about what he meant by the word "diversity" or "diverse" as used in the quote attributed to him in the article. (Id. at p. 14 (deposition pp. 53-54)). Significantly, Mr. Aaron did not testify that Mr. Bottorff had misquoted him, although Mr. Aaron was unable to recall the interview questions by Mr. Bottorff that may have prompted the statements quoted in the article.

Adequate opportunity to obtain discovery. As described above, plaintiffs' counsel has deposed Mr. Aaron and has had ample opportunity to question him directly about the accuracy and meaning of the quotes attributed to him in Mr. Bottorff's article.

Burden v. benefit of discovery sought. While the burden to Mr. Bottorff and *The Tennessean* of a single deposition in a single civil lawsuit may be relatively slight, the collective burden on news reporters and their employers if they were routinely called upon to produce their investigative files regarding matters in litigation would be considerable, and would jeopardize their ability to perform the valuable public function of gathering and reporting the news. On the other side of the balance, the undersigned Magistrate Judge finds that the value to the plaintiffs

7

of the discovery sought from Mr. Bottorff is relatively little. This is a case alleging that Chief Serpas and perhaps other MNPD police officers intentionally discriminated against plaintiffs in promotion decisions. No one claims that Mr. Aaron participated in, or had any personal knowledge of the factors considered in, the subject promotion decisions. Although Mr. Aaron did serve as the official public spokesman for the MNPD, there is nothing to suggest that Mr. Bottorff questioned Mr. Aaron directly about the promotion decisions giving rise to plaintiffs' claims, or that the statements attributed to Mr. Aaron in the article are relevant in any way to the decisions at issue in this case. Since Mr. Aaron had no role in the disputed promotion decisions, and further since the statements of Mr. Aaron in the article and, therefore, the discovery sought from Mr. Bottorff do not appear to be tied in any way to the promotion decisions made by others, the undersigned finds that the importance of this disputed discovery to a resolution of this case is very small.

For the reasons stated above, the undersigned Magistrate Judge finds that Mr. Bottorff and *The Tennessean's* motion to quash and for a protective order should be **GRANTED** and that the deposition of Mr. Bottorff should not be taken.

It is so **ORDERED**.

s/ John S. Bryant
JOHN S. BRYANT
United States Magistrate Judge

8